COMMONWEALTH of Pennsylvania, Appellant

v.

Francis FARINELLA, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 13, 2005.

Filed Nov. 2, 2005.

Hugh J. Burns, Jr. and Joan Weiner, Asst. Dist. Attys. Philadelphia, for Com., appellant.

Dave B. Mischak, Philadelphia, for appellee.

Before: MUSMANNO, BENDER and OLSZEWSKI, JJ.

BENDER, J.:

¶ 1 This is an appeal by the Commonwealth from a judgment of sentence imposed upon Appellee for the offenses of possessing an instrument of crime (PIC), simple assault and recklessly endangering another person (REAP). Appellant was tried non-jury and despite the fact that the court announced a verdict of "guilty" at the conclusion of the trial with respect to a charge of aggravated assault, the court concluded at sentencing that Appellee was not guilty of that offense. Thus, no punishment was imposed for this offense. The

Commonwealth contends that the court erred in essentially entering a judgment of acquittal at the time of sentencing based upon its reassessment of the evidence in preparation for sentencing. Because we agree with this proposition, we vacate and remand.

¶ 2 On the evening of April 15, 2003, Appellee, Francis Farinella, shot Mark Falucci in the chest with a handgun. The Commonwealth contended that the shooting was intentional, sparked by a simmering conflict between the two men which had been ongoing for a couple of weeks. Appellee admitted to shooting the victim, but contended that the shooting was accidental. Fortunately, Mr. Falucci survived the shooting. As a result of the incident, Appellee was charged with attempted murder, aggravated assault, simple assault, PIC and REAP.

¶ 3 Appellee was tried non-jury on February 9, 2004. After hearing the competing testimony, the court issued a verdict from the bench of guilty to aggravated assault, simple assault, PIC and REAP. The court found Appellant not guilty of attempted murder. Notably, in announcing its verdict from the bench, the court did not specify the grade of aggravated assault upon which it was returning a verdict of guilty.[1] Sentencing was set for April 19, 2004; however, due to several continuances, Appellee did not actually appear for sentencing until July 9, 2004.

¶ 4 When Appellee did appear for sentencing, Appellee's counsel noted that although the court had found Appellee guilty of aggravated assault, the court had not placed on the record the grading of aggravated assault upon which it had entered a verdict. Appellee's counsel then asked the court to grade the offense as an F-2. The Commonwealth objected to this suggestion noting that it had moved only on an F-1 aggravated assault.[2] Despite the Commonwealth's objection, the court announced that it was grading the conviction as an F-2 aggravated assault. This announcement sparked additional objection from the assistant district attorney (ADA) and a back-and-forth debate between the ADA and the court ensued in which the ADA argued the facts of the case with the court and tried to pin the court down on its specific findings of fact to support the court's newly announced verdict.

¶ 5 After this exchange between the ADA and the court had continued for awhile, the court announced that it was finding Appellant guilty of simple assault and not guilty of aggravated assault. When the court made this announcement, the ADA then objected on the basis that the court had already rendered a verdict of guilty on aggravated assault at the close of the non-jury trial. Ultimately, the court noted the Commonwealth's objection but, nevertheless, proceeded to sentence Appellant to two to four years' imprisonment on the PIC charge and to two concurrent terms of two to four years' probation on the simple assault and REAP charges. The Commonwealth subsequently filed the present appeal.

1. Although the court did not specify the grading of the offense at the time of announcing its verdict, we note that the verdict slip contained in the record forwarded to this court contains the handwritten notation "adjudged guilty" underneath the typewritten description of the offense "aggravated assault 2702 F1." The date of February 9, 2004, is also handwritten in a space above the disposition.

2. Parenthetically, we note that, contrary to the Commonwealth's protestations, the court is not prevented from finding a defendant guilty of a lesser included offense merely because the Commonwealth did not charge the defendant with the lesser offense. *See Commonwealth v. Cathey*, 435 Pa.Super. 162, 645 A.2d 250 (1994).

¶ 6 In its Pa.R.A.P. 1925 opinion, the court candidly relates what took place in bringing us to the present juncture. The court states:

At the conclusion of the waiver of jury trial on February 9, 2004, this Court announced a verdict finding the defendant guilty of aggravated assault. Prior to sentencing this Court performed an extensive review of the notes of testimony. During this time it became increasingly apparent to this Court that it had erroneously pronounced the defendant guilty of aggravated assault when indeed the facts accepted by this Court supported a verdict of simple assault.

Trial Court Opinion (T.C.O.), 12/10/04, at 1. In the face of the above events, the Commonwealth contends the court erred in changing the verdict on aggravated assault from guilty to not guilty at sentencing. We agree.

■ ¶ 7 As the trial court acknowledged, at the conclusion of the non-jury trial the court announced its verdict in open court and found Appellee guilty of aggravated assault. Pursuant to Pa. R.Crim.P. 621, when a case proceeds non-jury the court must render a verdict "which shall have the same force and effect as a verdict of a jury." Thus, once announced in open court, and certainly once entered upon the docket, the court's verdict was the same as if rendered by a jury. The fact that it was the court that reached the verdict did not make the verdict less firm than a jury verdict, nor did it make it malleable and capable of later revision by the court. *Commonwealth v. Melechio,* 442 Pa.Super. 231, 658 A.2d 1385, 1387 (1995) ("The authority of a trial court over a nonjury verdict is no greater than the authority over a jury verdict.") Consequently, unless the verdict was flawed in some fashion that relegated it subject to attack, the court had no more power to change the verdict than it would have had in a jury trial. *Commonwealth v. Fitten,* 441 Pa.Super. 373, 657 A.2d 972 (1995).

¶ 8 In response to the contention that it had reexamined its verdict after rendering it in open court, the court contends in its opinion that it was merely correcting an error in the pronouncement of the verdict. The court further contends that its findings of fact remained the same and that the verdict rendered at sentencing was merely a correction to reflect those findings of fact.[3] However, the pronounce-

---

3. Again, we applaud the candor underlying the court's opinion but note that other passages of the opinion seem to refute this contention. The court states:

At the time of trial, this Court fell into the familiar trap of focusing on the injuries and potential harm to the complainant in concluding that the defendant was guilty of aggravated assault. Jurors are routinely instructed that their verdict must be based upon proof, beyond a reasonable doubt, of each and every element of a crime, free from any sympathy they might feel for the victim of the alleged crime. This Court's original verdict was tainted by an improper emphasis on the seriousness of the injury to the complainant coupled with sympathy for the complainant. When the facts were carefully evaluated by this Court, it was clear that the proper verdict was to find the defendant guilty of simple assault.

T.C.O. at 2. This passage seemingly supports the proposition that the court was not merely correcting an erroneous announcement of a verdict but, rather, rethought its verdict while preparing for sentencing and substituted a new verdict. It may be true that the court "fell into a trap," when pronouncing its original verdict. Nevertheless, had a jury fallen into this trap, the verdict would not be subject to revision even if the entire jury met after the trial and reached the conclusion that it regretted its decision and the reason for reaching it. Since there is supposed to be no distinction between a verdict rendered by a jury and one rendered by the court, the court's subsequent realization that it had based its verdict on sympathy and emotion does not allow the court to revisit the verdict. Indeed, we reject-

ment in open court was not ambiguous and, upon its face, the verdict was proper.

¶ 9 The day has not yet come where the factfinder in a criminal case is obligated to answer special interrogatories and the judgment is molded accordingly by the court. While this practice is followed in civil court, there is no such parallel in criminal court. Consequently, since there is no methodology for forcing a factfinder to divulge findings of fact, there is no need for consistency between those findings and the ultimate verdict rendered. *Id.* Indeed, it is not necessary that a verdict be consistent with other verdicts rendered in the same trial. *Commonwealth v. Coon,* 695 A.2d 794 (Pa.Super.1997). Thus, once announced in open court, there was no basis for "looking behind" the verdict to the factfinder's reasoning or specific findings of fact, nor was there a basis for correcting what was, upon its face, a perfectly valid verdict. *Melechio, supra; Fitten, supra.* As the Commonwealth contends, at that point the only options left to Appellee were to attack the sufficiency of the evidence or assert that the verdict was against the weight of the evidence. Notably, Appellee did not raise either of these challenges.[4]

¶ 10 Judgment of sentence vacated, remanded for reinstatement of a verdict of guilty as to aggravated assault, resentencing to follow. Jurisdiction relinquished.

---

ed similar post-verdict reassessment of the evidence in *Melechio, supra.*

4. The verdict slip contains the following notation: "After post verdict motion in arrest in judgment, defendant is adjudged not guilty of aggravated assault." In point of fact, Appel-

lee never made a motion for arrest of judgment. Moreover, a review of the notes of testimony reveals that there would have been no basis for the granting of such a motion as the testimony presented was clearly sufficient to support the verdict.