NUMBER 13-06-428-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


THE STATE OF TEXAS, Appellant,


v.



ABRAHAM CHAVEZ GUERRERO, Appellee.

 


On appeal from the 117th District Court of Nueces County, Texas.


 


O P I N I O N



Before Justices Yañez, Rodriguez, and Vela


Opinion by Justice Yañez


 

 After a bench trial, a trial judge found Abraham Chavez Guerrero guilty of various
criminal offenses and pronounced punishment at five years' imprisonment. Later that
same day, the trial judge changed her finding of guilt to not guilty and entered a judgment
of acquittal. The State appeals the trial court's judgment, asserting that a judgment of
conviction must be entered because the trial judge lacked the power to change her own
reasoned finding of guilt to not guilty. We find that, under the factual circumstances
presented herein, the trial judge was free to change her finding. Because the State is
appealing from a valid judgment of acquittal, we further find that the State has no right to
appeal, and its appeal must be dismissed for want of jurisdiction.

I. Background

 On July 14, 2005, Guerrero was indicted on one count of attempted sexual assault
of a child (1) and two counts of indecency with a child. (2) Guerrero waived his right to a jury
trial and elected to have the court assess punishment. A bench trial commenced on July
10, 2006. The child in question, D.F., testified at trial. D.F., a sixteen-year-old female at
the time of the alleged assault, and the younger sister of Guerrero's fiancee, testified that
Guerrero had made physical, unwanted sexual advances towards her as she laid in her
bedroom. Guerrero, testifying in his defense, contested the truthfulness of D.F.'s
testimony. According to Guerrero, it was D.F. who made a sexual advance towards him;
he immediately rejected the advance and told D.F. that he would be telling her sister about
the incident, which D.F. protested because she feared her sister would be upset with her.

 After both the State and Guerrero gave their closing arguments, the trial judge
stated the following:

 You know, in all sexual assault cases, generally speaking, there's only two
people there. And it becomes a credibility issue between the victim and the
alleged perpetrator. And so, you have to listen attentively and I had the
advantage of hearing [D.F.] in the previous trial as well. You would have to
come to the conclusion that this was a huge fabrication. And you would have
to be unimpressed with the multiple details and the chronology of what
occurred. And so, I'm going to find that, beyond a reasonable doubt, Mr.
Guerrero, that you are guilty of attempted sexual assault of a child. And I'm
also going to find that you are guilty of two counts of indecency with a child.

 

The trial judge then pronounced Guerrero's punishment, stating:

 Having found you guilty of Count One, attempted sexual assault of a child,
I'm going to sentence you to five years in the Texas Department of Criminal
Justice. And having found you guilty of two counts of indecency with a child,
I'm going to assess punishment at five years for each count. All of these will
run concurrent. That is the order of the Court.


 After this pronouncement, Guerrero's defense counsel left the courthouse, and the
State's counsel informed the victim of the verdict and left the courtroom. Guerrero was
taken out of the courtroom and placed in the courthouse's holding cell. Approximately
twenty minutes later, the trial judge called Guerrero and the State's counsel back into the
courtroom. Attempts were made to get Guerrero's defense counsel to return to the
courtroom, but his counsel could not be reached. As a result, a former district judge, who
was found in the courthouse, was brought into the courtroom to stand-in as Guerrero's
defense counsel. (3) The trial judge then stated the following on the record:

 All right. Mr. Guerrero, go ahead and stand. I try very hard to be
comfortable with the rulings that I make. And after you left the courtroom it
didn't sit well with me. So, I am going to reverse my ruling. And I am going
to find you not guilty on Counts One, Two, and Three. I find that I have a
reasonable doubt. By preponderance of the evidence, if it was a civil case,
I wouldn't have a doubt. But I don't think there's sufficient evidence to
overcome the doubt that I have with regards to perhaps the victim wanting
to beat you to the punch on telling her sister over what transpired. So, that
is the ruling. It is not guilty on Counts One, Two, and Three, Mr. Guerrero.


The State did not protest this finding at trial. The State filed its notice of appeal on July 17,
2006, and the court entered a judgment of acquittal two days later.

II. Properly Framing the Issue Before this Court

 Article 42.01 of the code of criminal procedure states that a trial court's judgment
should reflect "[t]he verdict or verdicts of the jury or the finding or findings of the court." (4) 
In a jury trial, "the written verdict provides the basis for reforming an erroneous recitation
in judgment and sentence. In a bench trial the statement by the judge in the record is the
only comparable source that may be consulted to learn the decision of the fact finder." (5) 
"A judgment or sentence may only be reformed 'to cause those instruments to reflect the
true finding of the fact finder when such a finding is reflected in the verdict or, in a bench
trial, the pronouncement of the court's finding.'" (6)

 The trial judge stated on the record that she found Guerrero guilty, and that he
would have to serve five years in prison. At that moment in time, those statements
constituted the court's findings and, as such, dictated what the court's entered judgment
must reflect. The trial judge, however, later retracted the court's earlier findings by making
additional statements on the record, whereupon the judge found Guerrero not guilty. The
court then entered a judgment reflecting this later finding, as article 42.01 would seem to
require.

 But does article 42.01 demand that the entered judgment reflect the trial judge's
finding of not guilty, rather than the judge's previous finding of guilt? Perhaps the more
appropriate question is the following: When does a trial judge surrender his or her ability
to withdraw a finding of guilt? This latter question succinctly captures the State's sole issue
on appeal: "Whether a trial court has the authority to sua sponte set aside its finding of
guilty after a bench trial, pronouncement of sentence, and all parties left the courtroom." (7)

III. The State's Appeal is not Barred by Double Jeopardy

 "There is a good deal more to be said about the instant cause than that a judgment
of acquittal was entered by the trial judge before we can know for sure whether" the State's
appeal raises a double jeopardy concern. (8) This is because an accused will not be subject
to double jeopardy unless the accused was actually acquitted. (9) In Ex parte George, the
court of criminal appeals stated that the word "acquittal" means "a finding of fact that the
accused is not guilty of the criminal offense with which he is charged. And not just any
finding of fact either. It is an official factfinding . . . ." (10) Whether or not the judgment of
acquittal in this case was the product of an "official factfinding" is the very question this
Court has been asked to answer.

 If, as the State contends, the trial judge was bound by her original finding of guilt,
then article 42.01 prohibited her from entering a judgment of acquittal. (11) Despite
Guerrero's assertions to the contrary, any failure by the trial court to comply with article
42.01 would result in a void judgment. As explained by the court of criminal appeals:

 A trial court may have jurisdiction to act over a case, yet lack authority to act
in a particular manner over that case. . . . Lack of authority to act in a
particular manner may render the judgment either void or voidable
depending on the type of the error, however. Unauthorized acts (or errors)
can be characterized as either "illegal" or "irregular." "Illegal acts" are defined
as "acts that are not authorized by law." On the other hand, "irregular acts"
are defined as "acts or practices that vary from the normal conduct of an
action." While a judgment is merely "voidable for irregularity," it is "void for
illegality." (12)


If the law only recognizes the trial judge's original finding of guilt, then the entry of a
judgment of acquittal was more than a variance from the normal conduct prescribed by
article 42.01. Moreover, the trial judge's action would be outside the parameters of any
rule or procedure in place at that time. If so, the trial judge's act of entering a judgment of
acquittal would be more than a mere violation of statutory procedure; the action would be
unauthorized by law and, as such, would be void. (13)

 The court of criminal appeals has stated that "'[a] void judgment is a nullity from the
beginning, and is attended by none of the consequences of a valid judgment. It is entitled
to no respect whatsoever because it does not affect, impair, or create legal rights.'" (14)
Therefore, if Guerrero's acquittal is the product of a void judgment, he cannot use it to
counter the State's appeal on double jeopardy grounds.

 We further observe that the State's appellate brief contains the following prayer:
"[T]he State respectfully requests that the original judgment and sentence of the trial court
be reinstated and the second verdict on guilt be treated as a nullity." (15) The State's prayer
has left this Court with two choices: it may reverse and have the trial court essentially
reinstate its originally rendered judgment of conviction, thus obligating the court to enter
a judgment of conviction, or it may affirm. Neither choice raises a double jeopardy
concern. (16) In fact, federal and state courts have continually held that the Double Jeopardy
Clause is not violated by an appeal that results in reinstatement of a judgment of
conviction. (17)

IV. The State's Right to Appeal Under Article 44.01

 The State contends that it can appeal the trial court's judgment of acquittal because
the judgment constitutes either the granting of a new trial, or a modified judgment. (18)

 We reject the State's contention that it can appeal the trial court's judgment because
it constitutes the granting of a motion for new trial. Though this Court and the court of
criminal appeals have liberally interpreted the provision, "grants a new trial," so as to allow
the State to appeal various trial court decisions, this has always occurred when the
defendant actually raised some sort of motion. (19) In the case at hand, no motions were
raised by either party prior to the trial judge revising her findings and pronouncing Guerrero
not guilty. Moreover, the judgment of acquittal can hardly be construed as the functional
equivalent of the granting of a motion for new trial because the trial court did not previously
enter a judgment of conviction.

 We do believe, however, that--if the trial court was bound by its original finding of
guilt--then the State can appeal the trial court's judgment of acquittal because it
constitutes a modified judgment. We arrive at this determination recognizing that the
record does not reflect that the trial court first entered a judgment of conviction before it
entered its judgment of acquittal. Nonetheless, there are cases in which appellate courts
have interpreted a judgment as being "modified" when it failed to reflect a jury's verdict,
even though the trial court only entered one judgment, and that judgment was never
altered. (20) If a judgment can be construed as modified when it departs from a verdict in a
jury trial, then it can similarly be construed as modified when it purposely departs from a
finding in a bench trial.

V. Could the Trial Judge Abandon the Finding of Guilt?

 On appeal, Guerrero asserts that a trial court can change its finding of guilt to a
finding of not guilty, after the court pronounces punishment, but no later than the time the
court pronounces punishment and adjourns for that day. Accordingly, Guerrero asserts
that the trial judge could find him not guilty because she did so after punishment was
pronounced, but before the court had adjourned for the day.

 We have found no case law from this State explicitly supporting Guerrero's position,
and attempts to find guidance from other states only reveals case law adverse to his
claim. (21) In this case law, appellate courts have denied trial courts the authority to abandon
a finding of guilt because of double jeopardy and public policy concerns, (22) as well as a
belief that a judge should not be able to abandon a pronounced finding any more than he
or she can abandon a jury's verdict. (23) And while we have taken these cases into
consideration, this Court's evaluation of the propriety of Guerrero's position is ultimately
predicated upon various holdings from the court of criminal appeals.

 In Luna v. State, Luna appealed his conviction to this Court, arguing that "a jury
deliberating on punishment has the right to reconsider its determination of guilt after
hearing additional evidence during the punishment phase of the trial." (24) We rejected
Luna's argument on the basis that jury trials are bifurcated, stating:

 In Texas, criminal trials are bifurcated into a guilt/innocence phase
and a punishment phase. Article 37.07 authorizes the trial court to "first
submit to the jury the issue of guilt or innocence of the defendant of the
offense or offenses charged, without authorizing the jury to pass upon the
punishment to be imposed." If a finding of guilty is returned, a separate
hearing is held at which evidence relevant to punishment may be introduced
by the State and by the defendant. Punishment is then assessed by the trial
court or, if the defendant has so elected, by the jury.

 

 The Legislature clearly intended "determination of guilt" and
"assessment of punishment" to be two separate proceedings. It made no
provision for a reconsideration of the decision on guilt, after the punishment
phase has begun. Adopting [Luna's] interpretation . . . would negate the
system of bifurcation clearly intended by the Legislature, and would in effect
transform the determination of guilt and punishment into a single
proceeding. (25)


The court of criminal appeals has held, however, that the bifurcation statute applies only
to pleas of not guilty before a jury ; it has no application to a plea of not guilty before a trial
court. (26) The court has thus held that a trial judge may continue to consider evidence on
the issue of guilt after it has pronounced its finding of guilt. (27) This is because "the decision
of the [trial] court in a unitary trial is not fixed until it renders judgment on guilt and
punishment after all the evidence and arguments have been heard." (28)

 If a trial court retains the power to consider new evidence in support of its previously
pronounced finding of guilt, then it must also retain the ability to reconsider evidence
admitted prior to the court's pronouncement. Allowing a trial court to consider new
evidence and reconsider previously admitted evidence is a meaningless prerogative,
however, if the court has no authority to revisit its finding of guilt. Accordingly, the
prerogative to continue evaluating evidence of guilt, after a finding of guilt, must mean that
a trial court has the authority to second guess its finding, and revise it by a finding of not
guilty if the interests of justice so require.

 But can a trial court revise its finding of guilt after it has pronounced punishment? 
Relying on the court of criminal appeals' holding in State v. Aguilera, (29) Guerrero answers
this question in the affirmative. In Aguilera, the court held that once a trial court
pronounces punishment, the court "retains plenary power to modify its sentence if . . . the
modification is made on the same day as the assessment of the initial sentence and before
the court adjourns for the day. The re-sentencing must be done in the presence of the
defendant, his attorney, and counsel for the state." (30) Guerrero thus contends that a trial
court's plenary power over its finding of guilt expires at the same time it loses its power to
modify a sentence. We agree.

 A judgment in a bench trial cannot be fragmented (i.e., conviction and punishment
cannot exist independently of each other). (31) Accordingly, a trial court's plenary power to
change punishment constitutes the power to change the judgment in its entirety. As a
result, a court retains the authority to change its finding of guilt. Should a trial court elect
to change its finding of guilt, however, it must undoubtedly follow the same procedural
requirements articulated in Aguilera: the change must be "done in the presence of the
defendant, his attorney, and counsel for the State." (32) In Guerrero's case, the trial court
sufficiently complied with these requirements.

VI. Conclusion

 Because the trial court changed its finding of guilt after pronouncing punishment,
but before the court had adjourned for the day, we find that the court's judgment of
acquittal is valid, rather than void. (33) Moreover, because the trial judge had the power to
change her reasoned finding of guilt to not guilty, we reject the State's contention that the
trial court's judgment of acquittal constitutes a modified judgment. As a result, we find that
the State has no right to appeal, (34) and that its appeal must be dismissed for want of
jurisdiction.


 
 LINDA REYNA YAÑEZ,

 Justice





Concurring Opinion by Justice Vela.


Do not publish. Tex. R. App. P. 47.2(b).


Opinion delivered and filed this 

the 25th day of August, 2008.

1. Tex. Penal Code Ann. §§ 15.01 (Vernon 2003), 22.01 (Vernon Supp. 2007).
2. Id. § 22.11 (Vernon 2003).
3. The aforementioned information within this paragraph is known to us through the State's appellate
brief, which is supported by Guerrero's brief.
4. Tex. Code Crim. Proc. Ann. art. 42.01, § 1 (Vernon 2006).
5. Milczanowski v. State, 645 S.W.2d 445, 447 (Tex. Crim. App. 1983).
6. McCullough v. State, 720 S.W.2d 89, 90 (Tex. Crim. App. 1983) (quoting Milczanowski, 645 S.W.2d
at 447).
7. State's Brief at 6.
8. Ex parte George, 913 S.W.2d 523, 526 (Tex. Crim. App. 1995).
9. Id.
10. Id. at 527 (emphasis added).
11. See Tex. Code Crim. Proc. Ann. art. 42.01 § 1(7).
12. See Ex parte Seidel, 39 S.W.3d 221, 224-25 (Tex. Crim. App. 2001) (citations omitted) (emphasis
in original).
13. See id. 225.
14. Id. (quoting Ex parte Spaulding, 687 S.W.2d 741, 745 (Tex. Crim. App. 1985) (Teague, J.,
concurring)).
15. State's Brief at 22 (emphasis added).
16. The United States Supreme Court has held that the Double Jeopardy Clause bars a post-acquittal
appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate
into further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the
offense charged. Smalis v. Pennsylvania, 476 U.S. 140, 145 (1986). None of these results would occur if
we granted the relief sought by the State. The State is not asking the Court to afford it a second opportunity
to retry Guerrero, nor is it asking the Court to reassess factual issues going to the elements of the offense
charged against Guerrero.
17. See, e.g., United States v. Aslam, 936 F.2d 751, 754 (2d Cir. 1991) (citing United States v. Martin
Linen Supply Co., 430 U.S. 564, 570 (1977); United States v. Wilson, 420 U.S. 332, 352-53 (1975)); United
States v.Forcellati, 610 F.2d 25, 30 (1st Cir. 1979); People v. Mink, 565 N.E.2d 975, 981-82 (Ill. 1990);
Commonwealth v. Rawles, 462 A.2d 619, 621 (Pa. 1983); State v. Savage, 933 S.W.2d 497, 500 (Tex. Crim.
App. 1996).
18. See id. art. 44.01(a)(2) (stating that the State is entitled to appeal an order of a court in a criminal
case if the order arrests or modifies a judgment).
19. See State v. Savage, 933 S.W.2d at 498-500 (permitting State to appeal from defendant's motion
for judgment non obstante verdicto (JNOV) by construing it as the granting of a motion for new trial, despite
the fact that JNOV constituted an acquittal); State v. Bates, 889 S.W.2d 306, 310 (Tex. Crim. App. 1994)
(permitting State to appeal from defendant's "Motion Regarding Conduct of Trial" by construing it as the
granting of a motion for new trial); State v. Evans, 843 S.W.2d 576, 577-78 (Tex. Crim. App. 1992) (permitting
State to appeal from defendant's "Motion to Withdraw Plea of Nolo Contendere" by construing it as the
granting of a motion for new trial); State v. Garza, 774 S.W.2d 724, 726 (Tex. App.-Corpus Christi 1989, pet.
ref'd) (permitting State to appeal from defendant's motion for mistrial by construing it as the granting of a
motion for new trial).
20. In State v. Cook, a jury found Cook guilty of driving while intoxicated. No. 13-04-533-CR, 2006 Tex.
App. LEXIS 460, at *1 (Tex. App.-Corpus Christi Jan. 19, 2006, no pet.) (mem. op., not designated for
publication). The trial court, however, set aside the jury's verdict by signing an "Order on Instructed Verdict
(J.N.O.V.)," and entered a judgment finding Cook guilty of public intoxication, instead. Id. This Court found
that the State had the right to appeal the trial court's action because "the trial court's order effectively modified
the jury verdict from guilty of driving while intoxicated (DWI) to not guilty of DWI." Id. at *6 (emphasis added).


 In State v. Leroy, a jury found Leroy guilty of misdemeanor assault, and assessed punishment at a
fine of "none" and a confinement period of "none." No. 05-04-00260-CR, 2005 Tex. App. LEXIS 1294, at *2
(Tex. App.-Dallas Feb. 17, 2005, pet. ref'd) (not designated for publication). The trial court then signed a
judgment sentencing Leroy to one day's confinement and a one dollar fine. Id. On appeal, the State asserted
that the trial court erred by accepting a jury verdict that constituted no punishment. Id. at *1. The State based
its right to appeal on the allegation that the trial court modified a judgment. Id. at *4. The Dallas Court of
Appeals, in addressing the State's right to appeal, stated: "To the extent the trial court rendered a judgment
when it accepted the jury's verdict on punishment, we agree that the later, written judgment can be viewed
as modifying the initial rendition. Thus, we have jurisdiction to address the State's complaints involving the
final, written judgment." Id. at *4-5 (emphasis added; citation omitted).
21. See State v. Johnson, No. S97-10-0692, 1998 Del. Super. LEXIS 129, at *5-7 (Del. Super. Ct. Apr.
7, 1998) (holding that trial court could find defendant guilty, and sua sponte reconsider and vacate the finding
before it pronounced punishment later that day); People v. Hutchinson, 569 N.W.2d 858, 859-60 (Mich. Ct.
App. 1997) (holding that trial court could not find defendant guilty, and sua sponte reconsider and reverse its
finding nine months later, even though it did so prior to pronouncing punishment); People v. Jones, 512
N.W.2d 26 (Mich. Ct. App. 1993) (holding that trial court could not find defendant guilty, and sua sponte
reconsider and reverse its finding eight days later, even though it did so prior to pronouncing punishment);
People v. Carter, 473 N.E.2d 6, 10-11 (N.Y. 1984) (holding that trial court could not find defendant guilty, and
reverse its finding in response to a JNOV motion, even though the court reversed its finding prior to
pronouncing sentence); Commonwealth v. Stark, 584 A.2d 289, 291 (Pa. 1990) (holding that trial court could
not find defendant guilty, and sua sponte reconsider and reverse its finding before it pronounced punishment
later that day); Commonwealth v. Fitten, 657 A.2d 972, 973 (Pa. Super. Ct. 1990) (holding same).
22. See Hutchinson, 569 N.W.2d at 860 (expressing double jeopardy concern); Jones, 512 N.W.2d at
30 (expressing double jeopardy and public policy concerns).
23. See Carter, 473 N.E.2d at 11 & n.3.
24. Luna v. State, 70 S.W.3d 354, 356 (Tex. App.-Corpus Christi 2002, pet. ref'd).
25. Id. at 361-62 (citations omitted).
26. Barfield v. State, 63 S.W.3d 446, 449-50 (Tex. Crim. App. 2001).
27. See id. at 451; Jones v. State, 532 S.W.2d 596, 597 (Tex. Crim. App. 1976).
28. Barfield, 63 S.W.3d at 451.
29. Aguilera, 165 S.W.3d 695.
30. Id. at 698.
31. Jones v. State, 797 S.W.2d 33, 34 (Tex. Crim. App. 1990) (Clinton, J., dissenting) ("Where the
issue of punishment is referred to the jury, its verdict is not complete until the jury renders a verdict on guilt
and assesses punishment. So also a finding of guilt by the court in a bench trial without an assessment of
punishment is not a conviction.") (citing Faurie v. State, 528 S.W.2d 263, 265 (Tex. Crim. App. 1975); Woods
v. State, 532 S.W.2d 608, 609, n.1 (Tex. Crim. App. 1976)).
32. Aguilera, 165 S.W.3d at 698.
33. It is important to note that the power to abandon a finding of guilt does not entail the power to
abandon a finding of not guilty, for the latter act is barred by double jeopardy. See Smalis, 476 U.S. at 145;
Kepner v. United States, 195 U.S. 100, 130 (1904).
34. See Tex. Code Crim. Proc. Ann. art. 44.01(a).