399 A.2d 720

COMMONWEALTH of Pennsylvania, Appellant,

v.

Kevin B. KIRKMAN.

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Decided March 9, 1979.

Robert L. Eberhardt and Charles W. Johns, Assistant District Attorneys, Pittsburgh, for Commonwealth, appellant.

No appearance entered nor brief filed for appellee.

Before PRICE, HESTER and LIPEZ, JJ.

HESTER, Judge:

This is a Commonwealth appeal from an order granting appellee's motion in arrest of judgment after a non-jury trial which resulted in a verdict of guilty of two counts of robbery.

The procedural history and facts relevant to this appeal are as follows:

Two robberies took place on July 22, 1977 in McKeesport, Pennsylvania. The first occurred at approximately 11:00 P.M. as the victim, Daniel O'Brien, was walking along a main thoroughfare in McKeesport. He was accosted by a man who put a gun to his back and said, "This is a stick up. I will blow your brains out." (TT 17). The area was well illuminated and O'Brien took a few steps backward to allow more light on his assailant's face. In making his identification, he stated that his assailant was approximately five feet ten inches tall, between twenty and twenty-five years old and had a noticeable beard. Another man who assumed a passive role in the robbery was dressed in a similar fashion to the man with the gun, both wearing overalls. After taking the victim's wallet, they left the area. O'Brien identified the appellee as his assailant on three separate occasions. The first was on July 23, 1977 while appellee was in the cell block at the McKeesport Police Station at approximately 1:00 A.M. A week later, he identified him at the preliminary hearing, and finally in open court.

The second robbery occurred at approximately 11:45 P.M. as Frank Yednak, a McKeesport resident, left home for a walk. He noticed he was being followed by two "kids" who ran and caught up with him. One of them pulled a gun and ordered, "Take out your wallet" (TT 34). Yednak stated

they were under a street light which provided good illumination. He described the assailant with the gun as approximately five feet ten inches tall, wearing denim trousers and jacket, with long, light-brown hair and a beard. The second man was approximately five feet four inches tall, dressed the same as the man with the gun, and had long hair and a mustache. After the victim handed the assailant with the gun five one dollar bills, the two men disappeared down a nearby alley. At trial, the victim identified appellee as the assailant who held the gun and received the money. He also indicated that appellee had a beard at the time of the robbery and described it as a "regular" beard. Photographs introduced by the Commonwealth showing appellee to be clean shaven were of no evidentiary value because they were taken after the preliminary hearing, rather than at the time of the arrest. The arresting officer testified, however, that appellee did have a beard at the time of his arrest on July 23, 1977.

Three witnesses testified on behalf of the appellee. There was no dispute that appellee had a beard at one time. However, his next door neighbor testified that appellee came over to borrow an iron around the sixth or seventh of July and she remarked, "Oh, you look so cute, Kevin, I like you better without the beard." (TT 82). She further testified that she had seen him on July 22, the date of the robberies, and that he was clean-shaven. She was sure of the date because that was the day she came home from vacation.

A second witness, Perry Muse, a fellow employee, also testified appellee's beard was shaved about two weeks before July 22, and that everybody who worked with appellee "made a big deal about him not having it." (TT 88).

Mr. Robert Klamcher testified that he first met appellee on July 9, 1977, when he (appellee) began dating his daughter. He saw him four or five times a week thereafter and he was always clean-shaven.

We note that in filing motions after the verdict of guilty, appellee alleged that the verdict was against the weight of

the evidence, and secondly that the court should have permitted a lie detector examination.

The grounds upon which a motion in arrest of judgment may be based are set forth in 19 P.S. 871, which reads as follows:

Hereafter, in all criminal prosecutions in this Commonwealth in which the jury shall have rendered a verdict against the defendant, the defendant may, in addition to making a motion in arrest of judgment on the grounds that there is error appearing on the face of the record, may make a motion in arrest of judgment on the grounds that the evidence was insufficient to sustain the charge, and if the court, after consideration of the entire record, shall decide that there is not sufficient evidence to sustain the conviction, it shall forthwith discharge the defendant and dismiss the case. (1951, June 15, P.L. 585 § 1).

The proper standard to be used in deciding the motion, as stated in *Commonwealth v. Froelich*, 458 Pa. 104, 326 A.2d 364 (1974), is as follows:

Whether accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed, it would be nonetheless insufficient in law to find beyond a reasonable doubt that the appellee is guilty of the crime charged.

See also, *Com. v. El*, 255 Pa.Super. 597, 389 A.2d 138, 140 (1978).

Our Supreme Court made clear in *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977), that the same standard applies to a non-jury trial and reversed a trial court who failed to apply it.

The Commonwealth contends that the trial court improperly granted appellee's motion in arrest of judgment because the court engaged in a weighing of the evidence rather than applying the aforementioned standard in examining the record.

After a close examination of the entire record and the opinion of the trial court, we agree with the Commonwealth's position that the motion in arrest of judgment was

improperly granted. *Commonwealth v. Ponder*, 260 Pa.Super. 225, 393 A.2d 1235 (1978); *Commonwealth v. Dussinger*, 478 Pa. 182, 386 A.2d 500, 502 (1978); *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976). However, appellee also filed a motion for a new trial which was not acted upon by the court below. "Although the assertion that the verdict is against the weight of the evidence is not a proper consideration in passing on a motion in arrest of judgment, a criminal defendant may be given a new trial on that ground, and this is true, even where the evidence is legally sufficient to sustain a guilty verdict." *Commonwealth v. Meadows*, supra; *Commonwealth v. Davis*, 477 Pa. 197, 383 A.2d 891, 894 (1978); *Commonwealth v. Nelson*, 476 Pa. 269, 382 A.2d 715 (1977).

The granting of a new trial is a motion within the trial court's discretion. *Commonwealth v. Vogel*, 458 Pa. 200, 321 A.2d 633 (1974), and is not foreclosed by the decision on the arrest of judgment alone. *Commonwealth v. Ponder*, supra.

Accordingly, the order arresting judgment is reversed and the case remanded to the trial court for disposition of the motion for a new trial.